Michael Gouda, Law Offices of John Hill, for the appellant, David Wood. This case concerns the modern forensic use of DNA evidence. And DNA evidence, as we know, is evidence that we've learned to have a powerful place in law enforcement. It's a very powerful tool to solve crimes. And, in fact, in this case, of course, it ultimately was used to solve the murder that my client was originally accused of. That investigation was solved by other police authorities. But because of its DNA, the power of its ability to capture criminals and has been utilized successfully, it has had drawbacks as well. Counsel, what exactly is the nature of the claim that you're pressing before us today? Well, it's a – the nature of the claim is a failure to train and supervise law enforcement officials who are making calls on the use and application of DNA evidence as to certain criminal suspects. In this case, the man who was making the calls averred to the trial court that he had no such training or experience. Yet he was the man ultimately making crucial decisions with regards to the use of this DNA evidence. One of the key ones was, of course, when he was confronted with the fact, or he claims to have made in any case, when he was confronted with the fact that they had my client's DNA vials from 35 years at the time the crime was committed. Pardon me, Counsel. I don't believe that Officer Waddell affide that he had no training in DNA. What he affide was what training he had, which does not mention any training in DNA. There's a difference. Well, no. Actually, in his declaration, he specifically stated that he made no decisions with regards to DNA and he had no such training. And I would just cite it. Yeah. I would just cite in the excerpts of the record. He said, I have what page this would be page 25. He says, I have I never analyzed, tested, interpreted or compared any piece of evidence for DNA DNA. Are you reading? Oh, this is the page 25 from the excerpts of the record would be page 25. Page three of Waddell's declaration, paragraph 13, lines 20 and 21. I have I never tested. I never analyzed, tested, interpreted or compared any piece of evidence for DNA, period, nor am I qualified to do so. That's true. Someone else interpreted the DNA results. The point, however, Your Honor, is this. He made the decision, as I stated before, they had my client's DNA evidence. That is from 35 years. He made the decision what material to refer for testing. Is that your point? He made the decision not to utilize the DNA sample that they already had. Okay. So now so he made the decision not to use that. And what's the constitutional violation there? The problem is, well, one, that is in two ways, because first we look at first he said he made that decision. I think there's an issue of fact that he made no such decision. He didn't even know about the evidence from 35 years ago because of his declaration. He said he made no such determination when he was confronted with the fact that the DNA evidence from my client existed from 35 years ago. He said, well, I did make a decision. I decided that that evidence was too old and that it had a chain of custody problem. So there's an issue of fact. He's debating himself on that. What's the constitutional violation, counsel, specifically? He was making that he was making the call. He had no training and qualifications to do so. By his own admission. And so it violated what constitutional right? The right to the well, under the cases cited to the court, a municipality may be liable for failure to train or adequately supervise their officer. If that failure to train results in the deprivation of a constitutional right. Yes. So I'm asking you what constitutional right of your client was violated? The constitutional right was violated. Essentially, my client was then subject to a search and seizure, illegal search and seizure. The blood and saliva test, right? Well, yes, Your Honor. But it was more than that. Of course, they went in as a SWAT team with guns drawn. And, of course, as a result, my client was later had to declare bankruptcy. He's out of business. Then we get to the egregiousness of this error. After that occurred, and after they sent my client's evidence to the DNA lab, and they get the results back saying he's innocent, there's nothing wrong with this guy. They don't tell him for five months. Now, what constitutional violation is that? The evidence is, Your Honor, because of his lack of understanding of DNA, that he appears, he is not qualified to do this DNA analysis, not qualified to make any calls. That's the reason I think there's an issue, in fact, as to that being the reason for the delay in notifying my client that the DNA evidence, or at least the notification that he, that Officer Waddell received from the lab, was that you're fine, this guy's clean. Counsel, what's your best case authority for the proposition that a delay in notifying a suspect of exonerating test results is a constitutional deprivation? Well, I don't believe I need particular case authority as to what the result. Judge Rawlinson asked you what your best case was, not whether or not you needed authority. Well, Your Honor, I think it just goes under the general policy. Judge Rawlinson asked you what your best case. If you answer the question, it's going to help us decide the case. Well, Your Honor, I think it's the – it would be in the case, ironically enough, perhaps the case cited by the trial court, and that would be the Devereaux decision in which the NISERGA has determined that, look, if the officers are aware that someone is innocent, this adequate – and they just don't act upon that knowledge and, in fact, go foursquare into this investigation and continue to bully a man who they know is innocent, at that point in time it can amount to a constitutional deprivation. Okay. What evidence is there in the record that the officers in this case continued to bully your client once they got the test results? Well, this is – DNA evidence, as I stated in the beginning, is a very powerful tool. We know from a history – well, fairly recent history. I'm asking about evidence in the record. What evidence in the record is there that supports your contention that the officers continued to bully your client after they got the exonerating results? By keeping the cloud of guilt over his head. And everyone knows, unfortunate recent history in Southern California, that DNA evidence has a flip side. Many accused believe that perhaps it may be abused because of its mathematical certainty. Over a period of time, it becomes greater and greater concern as to how that DNA evidence will be used, perhaps in some improper fashion. And I think I would just reserve the balance of my time. Thank you, counsel. Good morning, Your Honor. Scott Patterson on behalf of the city defendants. I think counsel has confirmed what we had indicated in our papers, that this case is solely about the city's municipal liability and that there are no direct issues regarding Mr. Woodall's liability. It does not appear to be directly contesting the court's conclusions in that regard. And so I guess we get to the issue of, well, is the city facing any liability under the facts, evidence, and law of this case? I didn't understand the plaintiff to give up the argument that Woodall consciously and deliberately did not state in his affidavit that he had the hair of wood. And the question being whether a reasonable magistrate who learned that there was that hair and did not have an explanation from somebody who was competent to explain as to why the hair was no good. What would a competent magistrate do under those circumstances? Would he issue a search warrant? The court – well, the court – the district court obviously undertook that analysis and sided with the city and said both, I think, although I didn't need to get to the point, one, that a reasonable officer would not have understood that to be material, and so, therefore, you have kind of the qualified immunity aspect to say that even if it was an improper omission, that a reasonable officer would not have understood that to be a constitutional violation because they wouldn't have appreciated that it was material. Secondly, the court did go on, and I think do what's the correct initial analysis to determine whether there's even a constitutional violation, there must be not only the omission, which has to be deliberate or reckless, but furthermore, that it has to be material. Obviously, if you have one and not the other, there's no constitutional violation. Kennedy. What is the scope of our review or standard of review on that issue? Is it de novo or is it abuse of discretion? The materiality, I think the cases have said materiality is a de novo review by the court. And so on that prong, the court did go and say, well, I believe under the facts that I have, under the balance of the affidavit, reading in what should have been included and excluding what should have been excluded, which is the correct analysis to do under the law, that a neutral magistrate would in fact have issued a warrant under these circumstances. And when you look at the neutral magistrate knowing that the police had the hair and without an explanation as to why the hair was no longer good for DNA typing in view of the fact that they just exhumed the bones of the Catholic priest who had been dead for some years and they'd gotten DNA out of those bones, do you think that a reasonable magistrate would have said, well, that's okay, I'm going to order the blood and saliva tests anyway, even though they have the hair? I think they would have, Your Honor, for this reason. That analysis to say, well, a neutral magistrate would have held the officers to limiting their investigation to a hair that's 35 years old, I don't think a magistrate would have said that. You'd be, I think, strictly limiting what the officers can do in their investigation. That's – obviously, Devereaux says you can't really come back and question how the officers are investigating. We don't want to be limiting them, at least from a civil liability aspect. I think a magistrate would have those same concerns to say, I have an officer in front of me. We have an opportunity to get current DNA samples. Is there some rule that says if you already have evidence of X that you can't use a search warrant to get more evidence of X? I'm not aware of that, and I think that's the nature of the argument, basically, Your Honor, is, well, you've already got this evidence. Stick to that. Try that first. See how that works. It sounds like the federal wiretap statute where you have to show a necessity for the wiretap. You have to demonstrate that other methods of getting this information have been utilized and failed or can't be utilized. But I know of no such rule at all in the area of search warrants. I'm not aware of it either, Your Honor, and I think that's the essence of the argument in this case. What he's holding the city to is saying, look, your claim that it's necessary, I think, frankly, is just kind of an ultimate conclusion. They obviously wanted DNA samples. I might add the warrant wasn't strictly limited to DNA samples. It was a much broader warrant for a number of items. DNA samples were included within that. The issue here is, I think, was there probable cause to submit Mr. Wood to search and seizure. And clearly, the balance of the affidavit demonstrates that beyond any, I think, reasonable question, there was adequate probable cause to believe under a plethora of facts that Mr. Wood may in fact have been a valid suspect of the murder. And so we have probable cause to conduct a search. I think Mr. Wood's position is, as to the body fluids, which involves a constitutional right of privacy. Sure. Was there adequate cause to take his blood and saliva when you already had his hair? That's the issue. Sure. No, and I understand that to be, I guess, I don't we have probable cause, obviously, to take it. I'm not aware that, as Justice Trott has indicated, there's some added probable cause or necessity that you have to go beyond to get DNA samples simply because you may have a sample that could potentially be useful. And I might add, on the record, there is no evidence that the hair sample would have been productive. Frankly, there's no evidence either way. What Mr. Woodle said, I think, has been slightly mischaracterized here. He didn't say, I felt that the hair had been compromised so much, as he said, we had a fresh sample available. My thought was that would be more appropriate. And there may have been some concerns about the hair. He didn't say, and I think that goes to the issue of this alleged inconsistency between his declaration and his affidavit. His declaration talks about, I'm sorry, analysis, testing, things of that nature. I think in the context, it reads as lab work. And he obviously didn't do lab work. That's not to say he didn't think about the hair. Obviously, he didn't include it in his affidavit. But that is dealt with by the Court when it reads that fact back into the affidavit and then reviews it for probable cause purposes. So I don't believe there's any material omissions that he has cited to or material misrepresentations for that reason. There would be no constitutional violation and certainly no municipal liability in the absence of such a constitutional violation. There was an allusion here to the constitutional violation in the first instance also encompassing the manner in which they took the samples, SWAT team, guns and that. That's nowhere in the record to my knowledge. So I would ask the Court to disregard that. Scalia. What about this cloud of guilt? Well, Your Honor, I have struggled with that. I think the question from the Court was pertinent, which is where's the case law on this. I'm not a – we couldn't find any. I think we as much as said that in our papers, that there's no law suggesting that this is something that officers are constitutionally bound to do. I think there's policy reasons that counsel against that, which is whenever you take a sample or a test from a suspect, you have to go back within a certain period of time, an undescribed period of time, and tell them what the results are. Well, I think that's really not going to be effective for law enforcement to have that kind of constitutional exertion of force on them to be doing this. Again, it impairs how they investigate cases. I think it's a slight mischaracterization to say that the city concluded that he was, in fact, innocent. They did not conclude he was innocent. All the report said is that the DNA types don't appear to match. That's not a conclusion of innocence. And you can't be going back to witnesses and saying, well, the DNA test hasn't incriminated you yet, but, you know, we'll keep you posted on if we want other information. That's – I don't think that's entirely accurate to characterize it by saying he's innocent. Secondly, Devereaux is a completely different situation. In that case, I think the concern was that even after acknowledging that they were – that the suspect was innocent, the officers did continue to actively pursue their charges and subjected the plaintiff to additional searches and seizures or constitutional violations. This cloud-of-guilt theory is far too nebulous. I'm not even sure what constitutional amendment it springs out of, to be honest with you. It doesn't appear to have any tie to – that I can discern clearly. Well, Richard Jewell managed to secure a huge recoverment from the federal government because he was called a suspect in the Olympic Park bombing. And now they don't call people suspects anymore. They call them persons of interest. Yes. Simply because people have a right to have their reputations not shrouded by these clouds of guilt. Well, I understand that – I suppose in some sense there's an interest. I can't confess to any intimate knowledge as to the legal theories precisely under Mr. Jewell's case. And so I – Well, it's a man's reputation, isn't it? Well, I understand that someone has – Isn't that more valuable than his purse, according to Shakespeare? Sure. That has been said, Your Honor. But I guess the problem is when we're talking about violations of constitutional magnitude, we have to, I think, come back to some amendment to say, well, this is where it springs from. And then beyond that, I think the officers have to have some – there has to be some parameters. Well, how about the – how about the penumbra in which we find rights of privacy lurking to our great amazement and surprise? That could also be, Your Honor. I suppose there are possibilities for more fertile minds than mine. I just don't have a firm grasp. I never heard anything from Plaintiff's counsel really coming up with any kind of solid legal grounding for that theory. And again, I wasn't unable to come up with any cases really addressing it one way or the other. And Plaintiff's counsel did raise this claim rather late. The Court did consider it, notwithstanding that, and just couldn't find any support for it. And I'm afraid I'm unable to come up with any stinging legal authority to back our position. It's more that there's an absence of authority. And I think it's unfair to impose liability on officers or derivatively in some fashion to municipalities based upon a theory that really does not appear to have any current backing in the existing state of the case law. It's good practice when you've completed an investigation and found that the suspect is not guilty or cannot be charged to say so publicly, isn't it? Well, that's – I don't think that's what we're arguing about so much, Your Honor. I would agree that all things considered, that's a laudable approach. It's not a constitutional right. It's not a constitutional right. And I do think in this instance, certainly there is no – there's no determination in the record that anybody concluded he was innocent. And so then you're in a situation of saying, well, there is in California law a procedure whereby a person can go to court and get a declaration of innocence. I'm not sure at what stage that attaches, though, whether it's without any charges ever having been filed or whether charges after charges have been filed. I'm not certain either, Your Honor. And to be frank, again, this isn't in the record because there's no evidence one way or the other about their ultimate determinations. I don't believe he could have obtained one. I think he was still under investigation. The crime does appear to finally have been resolved. I don't think it necessarily had anything to do with DNA evidence, but there was a break in the case. So they caught the real killer? Well, that's everybody's belief at this point. There was some – I don't want to get this wrong, but I think there was some transient trucker character who had actually been something of a serial killer, as it turns  Thank you, counsel. Your time has expired. expired. You may take the podium. Really brief, I have one that I think when I heard it in the newspapers was interesting enough the way they solved the crime was they found a guy way back east and they found out that he was licking his envelopes. So instead of surreptitiously, they went into his mailbox and pulled him out and found out, you know, got his DNA that way. Now, if something like that happened to my client, my client wouldn't have a problem because his problem was it was very public what they were doing in their investigation. And what we have here in this case is really – we keep arguing should it be fair for the police to be heard for this horrible burden of consciously making decisions and how fast they have to make them. We don't know whether they consciously made any decision here. We don't know whether this is a product of complete negligence or conscious decision. That is the issue of fact. The real problem here is the lack of training. The counsel I heard said that the trial court may have read into from this declaration magically the training that this Mr. Woldell would have needed to make the decisions. Well, what do we know about training? The trial court didn't get the training because the trial court concluded because there was no constitutional violations, don't bother me with municipal liability. Right. And I believe the trial court went about it the wrong way in that way because the municipal liability would have to be determined based ultimately on whether or not the – well, whether or not as a result of something that Mr. Woldell did not do, whether or not there was a constitutional deprivation. Here, the – as a result of what Mr. Woldell did not do, that is, reveal certain facts to the magistrate. If the magistrate knew, interestingly enough, if the magistrate was asked, well, if the magistrate knew about this vial of hair from 35 years ago, I assume Mr. Woldell would have told the magistrate what he tried to tell me as his alibi in his deposition that, well, wait a minute, Your Honor, we don't really know we could use that 35-year-old hair sample because there's a chain of custody problem. What do you think the magistrate would have done then? If there's a chain of custody problem with this hair in the vial, how good is that to the magistrate? So there still would – that chain of custody problem would have remained. The DNA evidence that they received from my client was not – would have been no good unless it could be compared to something adequately at the crime scene. And they would have been admitted that they couldn't. The bottom line, as you describe it, is there was an awful lot of Fourth Amendment damage done to your client. The trial court took a look at the problems with the search warrant and says even if you take those out, as the law requires, the search warrant is still good. And that's why the search warrant itself wasn't a constitutional problem and neither was the search. What's the problem with that? The problem with that is everything other than this DNA evidence was known to the police for 35 years. They never sought to have a warrant. They knew it wasn't a probable cause. They never even sought to. The warrant itself, Officer Woldell said it himself. The real reason why I think this man is our chief suspect is because of the DNA evidence. He said it in his – in the warrant itself. I should say in the application for the warrant itself. Well, is there some case that says if you already have evidence of X that you're precluded from using a search warrant to get more evidence of X? I don't believe there is, Your Honor, but I think it's – it is important for the officers to be frank. That is not the only constitutional deprivation, just the mere 35-year, you know, file. I don't think that that is the only problem. But if there was colloquy – if it was frank colloquy between the officer and the magistrate as to all the facts that Woldell knew that were relevant to this issue, I think the magistrate would have learned that there was something about this warrant – I should say the application of the warrant that was being prosecuted by someone who apparently didn't know much about DNA evidence at all and couldn't make these decisions. All right. Thank you, counsel. The case just argued is ordered submitted. And if Mr. Haynes is here, we'll call United States v. Santos Garcia-Sanchez. He's here.
judges: Trott, Rawlinson, Bea